IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ROBERT L. MERIWETHER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 5:19-cv-285-MTT-CHW |
| | : |
| JESSICA BATTLE, | : |
| | : Proceedings Under 42 U.S.C. § 1983 |
| Defendant. | : Before the U.S. Magistrate Judge |
| | : |

## REPORT AND RECOMMENDATION

Before the Court is a motion for summary judgment filed by Defendant Jessica Battle. (Doc. 30). Because no reasonable jury could conclude that the Defendant was deliberately indifferent to Plaintiff's bacterial scalp infection, it is **RECOMMENDED** that the Defendant's summary judgment motion be **GRANTED**.

## FACTS

On screening under 28 U.S.C. § 1915A, the Court allowed Plaintiff, a prisoner, to proceed on a claim of deliberate indifference against Defendant Battle, a prison nurse. That claim was based on Plaintiff's allegations that Battle inadequately treated a bacterial infection on Plaintiff's scalp from January 2016 until November 2017, when Plaintiff required surgical intervention to remove a bacterial mass. (Doc. 8, pp. 3–5). Construing these allegations in Plaintiff's favor, the Court noted that it was "possible that Battle's … failure to try a different treatment or refer Plaintiff to a specialist sooner could be considered deliberate indifference that amounted to more than mere negligence." (*Id.* at 5).

The record now available to the Court shows that Plaintiff did suffer from a bacterial scalp infection as alleged. In his deposition, Plaintiff describes receiving a haircut at Wilcox State Prison

1

in January 2016, and later noticing "a little itch up on the top of my head." (Pl.'s Dep., Doc. 30-5, p. 26). Plaintiff eventually requested medical assistance and saw Defendant Jessica Battle, a nurse, "maybe eight or nine days later." (*Id.*, p. 28). Treatment records from March, April and June of 2016 show diagnoses of alopecia or folliculitis, for which Plaintiff received the antibiotic Rocephin along with a medicinal shampoo. *See* (Doc. 30-3, pp. 5–7) (Battle Decl., Doc. 30-4, ¶¶ 5, 6). During this period, Plaintiff testifies that Defendant Battle made a request for Plaintiff to see a neurologist, but that Dr. Ayers, a non-party, denied the request. (Pl.'s Dep., Doc. 30-5, p. 32).

Plaintiff also testifies that Defendant Battle acknowledged she would "put [Plaintiff] in for a dermatologist" visit. (*Id.*, pp. 32–33). Shortly thereafter, in August 2016, Plaintiff was transferred to a different facility, Washington State Prison. (Battle Decl., Doc. 30-4, ¶ 8). When Plaintiff asked unnamed medical sources at Washington State Prison about the dermatological consultation, "they checked and they said … 'ain't no consult here.'" (Pl.'s Dep., Doc. 30-5, p. 33). Accordingly, a new request for a dermatological consultation was made in September 2016, although Plaintiff didn't get to Augusta [State Medical Prison] until February of 2017 to see [a] dermatologist." (*Id.*, at 58). *See also* (Doc. 30-3, p. 9) ("CT … on 2/10/17).

In the interim, Defendant Battle was herself reassigned to Washington State Prison in the fall of 2016, ("Battle Decl., Doc. 30-4, ¶ 9), "a couple [of] months after" Plaintiff was transferred. (Pl.'s Dep., Doc. 30-5, p. 62). There is an immaterial dispute of fact as to how long Battle continued to work at Washington State Prison: Plaintiff claims Battle "stayed for about … three or four months, and then she left," (Pl.'s Dep., Doc. 30-5, p. 63), whereas the medical evidence suggests that Battle continued to provide Plaintiff with medical treatment at Washington State Prison into late 2017, including after Plaintiff's eventual surgery in late October. (Doc. 30-3, pp. 12–15).

In any event, after Plaintiff saw a dermatologist in February 2017, the record shows that Plaintiff was scheduled for an excision and skin graft procedure, but that Plaintiff voluntarily declined that surgery in June 2017 due to his involvement ongoing state legal proceedings. *See* (Doc. 30-3, p. 8) ("I want the procedure at [a] later date due to appeal court proceeding"). *See also* (Pl.'s Dep., Doc. 30-5, p. 39) ("I told them I had a pending case in the Georgia Supreme Court). By Plaintiff's account, once he finalized and submitted a legal brief, he then "g[o]t them to resubmit the surgery" request. (Pl.'s Dep., Doc. 30-5, p. 40). The record indicates that the surgery was performed on October 31, 2017, and that Plaintiff was discharged on November 3. (Doc. 30-3, p. 16).

Plaintiff acknowledges that the surgery alleviated his condition, (Pl.'s Dep., Doc. 30-5, p. 38), but Plaintiff contends that he suffered pain both before and immediately after the procedure, (*id* at 23), and that the invasive nature of the procedure itself could have been mitigated by earlier action. *See, e.g.*, (*id.* at 31) ("By the time I got to the surgeon it had spread over all this part of my head"). As relief, Plaintiff asks for five million dollars in damages. (Compl., Doc. 1, p. 7).

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

3

## ANALYSIS

Because the record, even when construed in Plaintiff's favor, fails to show deliberate indifference, Defendant Battle is entitled to summary judgment. While the Eighth Amendment obliges States to provide medical care for prisoners, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), only deliberate indifference to a serious medical need amounts to an "unnecessary and wanton infliction of pain" violating the Eighth Amendment's cruel and unusual punishments clause. *Id.* at 104. Defendant Battle concedes, for purposes of summary judgment, that Plaintiff's bacterial scalp infection may have posed a serious medical need, (Doc. 30-2, p. 6), so the inquiry in this case turns on whether Plaintiff can establish deliberate indifference.

The standard for deliberate indifference is "far more onerous than normal tort-based standards of conduct sounding in negligence, and is in fact akin to subjective recklessness as used in the criminal law." *Hoffer v. Sec'y, Fla. Dep't of Corrs.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal quotations omitted). As a result, to show deliberate indifference, a plaintiff must demonstrate that the defendant had subjective knowledge of a risk of harm, but disregarded that risk by conduct amounting to "more than gross negligence." *Id.* at 1270. When some form of medical treatment is provided, that treatment "violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1271 (internal brackets omitted).

Based on these legal standards, Plaintiff cannot show deliberate indifference on the present record because Plaintiff cannot demonstrate that Defendant Battle's conduct rose to the level of "more than gross negligence." Even when construed in Plaintiff's favor, the record shows that Defendant Battle provided treatment in the form of antibiotics and medicinal shampoos and creams from February 2016 until August 2016, when Plaintiff was transferred from Wilcox State Prison

to Washington State Prison. The fact that this treatment was not successful does not, by itself, establish deliberate indifference. *See, e.g.*, *Wheatt v. Kilgore*, 2019 WL 5086777 at *6 (N.D. Ala. 2019) ("The fact that conservative treatment was not successful does not make it deliberately indifferent treatment"). Nor does Plaintiff's desire for other forms of treatment show deliberate indifference. *See, e.g.*, *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference").

Plaintiff's strongest argument against Defendant Battle is that Battle's failure to request a dermatological consultation in July 2016 resulted in a delayed diagnosis of Plaintiff's scalp infection, delayed surgical intervention, and an intervening worsening of Plaintiff's condition. For three reasons though, even this argument fails to show deliberate indifference on the present record. First, Defendant Battle's failure to request a dermatological consultation was at most mere negligence or medical malpractice, which does not meet the standard of deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Mere medical malpractice, however, does not constitute deliberate indifference"). Second, even when different medical sources at Washington State Prison requested a dermatological consultation for Plaintiff in September 2016, Plaintiff was not able to treat with a dermatologist at Augusta State Medical Prison until February 2017. (Pl's Dep., Doc. 30-5, p. 47). There is no reason to conclude that this delay was the result of Defendant Battle's earlier conduct at an entirely different prison facility. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (listing "reason for the delay" as a factor in the deliberate indifference calculus).

Third, Plaintiff's voluntary decision to delay his surgery from June to late October 2017 due to pending state litigation suggests that Plaintiff's medical need was not objectively

5

sufficiently serious. *See* (Pl.'s Dep., Doc. 30-5, p. 39). It also further suggests that Battle's conduct did not worsen Plaintiff's medical condition. *Goebert*, 510 F.3d at 1327 (listing "seriousness of the medical need" and "whether the delay worsened the medical condition" as additional factors in the deliberate indifference calculus). Accordingly, Battle's conduct prior to Plaintiff's surgery does not support a finding of deliberate indifference.

Finally, Battle's conduct after Plaintiff's surgery also gives no cause for a finding of deliberate indifference. On Plaintiff's facts, Defendant Battle was no longer working at Washington State Prison by the time Plaintiff was discharged from surgery in November 2017, so Battle necessarily could not have been deliberately indifferent at that time. (Pl.'s Dep., Doc. 30-5, p. 63). On the Defendant's facts, which are more favorable to Plaintiff, Defendant Battle was still working at Washington State Prison, but she continued to provide Plaintiff with adequate medical care. *See* (Doc. 30-3, pp. 14–17) (medical records). This factual dispute is immaterial because under either set of facts, the record would not support a finding of deliberate indifference. Therefore, Defendant Battle is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

## CONCLUSION

Based on the analysis herein, it is **RECOMMENDED** that Defendant Battle's motion for summary judgment (Doc. 30) be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 21st day of May, 2021.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge